May it please the court. Police violated Quentin Ferebee's Fourth Amendment rights when they searched his backpack without a warrant after removing him from the house where the bag was located. He didn't abandon his reasonable expectation of privacy in the bag when he answered Officer Ben Savage's question about the bag by saying this isn't even my bag. To determine whether Ferebee abandoned a reasonable expectation of privacy, the court has to consider the totality of the circumstances. And when it does that, the court cannot consider Ferebee's statement at all because Detective Gross, who's the person who searched the bag, did not know that Ferebee had said the bag was not his. That's undisputed that Detective Gross is the only person who searched the backpack and that he was unaware that Ferebee had said that the backpack wasn't his. The correct test for determining abandonment considers how the defendant's words and actions would be judged by a reasonable person possessing the same knowledge available to the searching officer. This court applied that test in United States v. Naughton. And while Naughton's an unpublished decision, it's consistent with published decisions in the Seventh and in the Eighth Circuits. Because Detective Gross didn't know about Ferebee's statement, that information is irrelevant to the abandonment inquiry and Ferebee's statement is the sole evidence in the record suggesting abandonment. So your view and the view of those circuits would be that even though if you've made an objective determination that the individual made an abandonment, he says, this is not my property. You nonetheless move to a subjective view of what did the particular individual who was doing the search, I guess it would be an objective view, what did the person doing the search know? So even though it would be an established fact for the rest of the world that there was abandonment, if the searching officer did not know, that's the only applicable test. That's correct. And I think as you just said, that's actually not a subjective test. It's an objective test. And the question is from whose point of view are you viewing the objective facts, not what the officer actually thought subjectively when he searched the bag. And I think that the reason for that is that a person can abandon his reasonable expectation of privacy as to one person without abandoning it to another, as to another. And I'll give you an example of that. Let's say that I walk into a park and I put my handbag down on a bench and walk away from it and then Officer Smith comes up to me and says, is that your bag? I say no. I have waived my reasonable expectation of privacy as to Officer Smith. But he looks in the bag, doesn't find anything, and leaves it there and walks off. So I pick the bag up and then I encounter Officer Jones. But I haven't waived my reasonable expectation of privacy as to Officer Jones because he sees me holding that bag and he doesn't know that I've said to another officer that it's not my bag. And that works on the flip side too because Officer Jones, Officer Smith's not, the knowledge of Officer Jones that I've reclaimed the bag is also not imputed to Officer Smith. Have you got a case that stands for that proposition? For the flip side, yes. And that would be the Pitts case from the Seventh Circuit where they say that the later information about what the person intended to do with the bag is not imputed to the searching officer because he didn't have that information at the time. It would seem to me that when we're examining the legality of a search that the first thing a defendant has to show is that he has a reasonable expectation of privacy. Right. Before we even worry about whether or not the search is appropriate or legal after that. So, when your client says, you know, this is not my bag, he has then no reasonable expectation of privacy in it. So, what does it matter? Well, I think that's actually... Who actually conducts the search? I think that there's two different inquiries. And the Seventh Circuit cases are very helpful in explaining this. That the abandonment inquiry is not the same as the reasonable expectation of privacy. He established a reasonable expectation of privacy by admitting after the search that the bag was his. So, but the question of abandonment... I understand you say that. But, I mean, logically that's just the whole theory. I mean, the cases say what they say. That's obviously correct. But that just makes no sense to me. I mean, if you have objectively abandoned your interest in property, what difference does it make? I mean, that's established as a fact. What difference does that make to some outside party? If you have abandoned it, it's abandoned. I mean, it seems like to me that that would just be the logical conclusion. Not necessarily the conclusion other courts have reached, but... I don't think that is a logical conclusion. Because I do think that you can abandon your property as to one person without abandoning it as to another. Depending on what your conduct was in the presence of that person. Well, if there's a dispute over ownership, I would agree with you. You know, that comes up a lot in property law. But if you've announced, this is not my property, I have trouble grasping the basis that you can come back later and say, it's not a matter of mistake, I just lied, and I really do own this piece of property now that it works to my benefit to claim it. Okay, well, there's two different points I'd like to make with respect to that. And one is that you have to look at the language that he used. Because the officer was questioning him about the bag and what was in it, and all he said was, this isn't even my bag. But he didn't say that he wasn't using it or that the items in it didn't belong to him. And in that sense, it's similar to the case from the Ninth Circuit that I cited in the briefs, which is Lopez Cruz. But he said, it's not my bag, without limitation. I mean, he just says, this is not my bag. But the court can't, there's not a bright line rule. There is no court that applies a bright line rule saying that a disclaimer by itself is all you look at. You have to look at the totality of the circumstances. I thought that he held on to the bag. He did hold on to the bag, and that is a critical fact here because it is completely inconsistent with any disclaimer of ownership. Because this is an unusual set of facts. So, eight officers descend on... If they weren't unusual, we wouldn't be up here. That's right. So, eight officers descend on this small house, and they come in and they begin searching. And at this point, Farabee picks the bag up off the floor, obviously to keep them from looking at the bag because they're looking at everything. And then they tell him to get up because they're going to search the couch. And he keeps the bag in his hand when he gets up. And he's still holding on to it when they ask him, what's in the bag? And he says, this isn't even my bag. So, the court can't ignore those circumstances. Those are critical. And in Smith v. Ohio, the Supreme Court talks about efforts to keep the police from looking in your bag are inconsistent with any abandonment. I think Judge Floyd makes a good point that he makes a statement, but he holds on to the bag. Correct. And what is a reasonable person to deduce from the fact, from those two facts? It's not my bag, but I'm holding on to it. But he's claiming a possessory interest in the bag even if he's saying that it's not his. Isn't that inconsistent with what he's saying? That's not inconsistent with what he's saying when he says it's not my bag. But he obviously has some possessory interest in the bag because he's still holding on to it. And, you know, the Supreme Court says ownership's not everything. Why would you say he has a possessory interest? He's just laying on the floor. He picks it up. How does that give him any possessory interest? He says it's not his. He says it's not his, but everything that he's doing is inconsistent with it not being. Why is that inconsistent, though? He's trying to keep the police from looking at it. But that, well, never mind. And, again, he says it's not my bag, but he doesn't do. The only case that the government can cite that's anywhere similar where somebody is holding on to a bag and at the same time saying it's not theirs is that United States v. Torres case from the Second Circuit. But that was a lot different. The lady had a shoulder bag at an airport, and she said, it's not my bag. My mother gave it to me. She told me not to look into it. You can search it if you want. I mean, those circumstances are entirely different from this. This is more similar to the Lopez Cruz case. What about the Fourth Circuit's decision in Han? I mean, Han had even better facts than this fellow does. As far as? His interest in the bag, whether or not it was his, whether or not he abandoned it. Well, no, he didn't have. It was on the floor. Well, no, wait a minute. He even said, well, this is my bag, until he retracted that. He said, it's not my bag. It's on the floor next to him. He's never holding it, and he said that they could look in the bag. In addition to that, he said they could look in the bag. So it is distinct from Han in that sense. Han was never in physical possession of that bag. He wasn't doing things that were inconsistent with the disclaimer of ownership in the bag. Doesn't evidence of abandonment have to be clear and unequivocal? Yes. And we definitely do not have that here. Because he did not, Ferebee did not abandon his reasonable expectation of privacy in the bag, Detective Gross violated Ferebee's Fourth Amendment rights when he searched the backpack without a warrant, because the search was not justified as a search incident to arrest. Under Schimel v. California and Arizona v. Gantt, a search incident to arrest is limited to the area within which an arrestee might obtain a weapon or evidence at the time of the search. And as the Third Circuit explained in Shakir, this portion of Gantt's holding is not limited to vehicle searches. First of all, Gantt relied on Schimel, and Schimel is not a car search case. Second, many courts of appeal, including this one in Littman and Han, applied on New York v. Belton to establish a relaxed rule for the timing of search incidents to arrest, not just in vehicle searches, but in all contexts, because Han and Littman were not even vehicle search cases. Because Gantt forecloses that reading of Belton, there's no plausible reason why it should be held to do so only with respect to car searches. And what's more, the only part of Gantt that the Supreme Court limited to vehicles is the part that allows a search when police reasonably believe the vehicle contains evidence of the offense of arrest. So, the Supreme Court made clear which part of Gantt applies to vehicle searches only and which part doesn't. Four factors here demonstrate the police could not have reasonably believed that Fairby was within reaching distance of his bag at the time of the search. First, Detective Groats searched the bag inside the house, in the living room, after police had both handcuffed Fairby and removed him from the house and taken him into the front yard. You know, when you read that in the brief, that has a certain power to it. But then when you look at the video, it's a much different factual setting because the officer and the defendant are closer than you and I are, and it's fairly obvious that it's a quick two or three steps and he's at the bag. I disagree with that interpretation. Because I've watched the video a number of times. Well, I have too. And I don't think the video is telling a false story. I think that they may be about the distance between you and me. But there are other things going on as well. There are six officers inside the room, and some of them have weapons. There are no other civilians around. They've already taken the two women to the backside of the house. And Fairby's in front of the house, in the yard. He's facing away from the house. He's right there on the stoop. You can see it in the video. And the officer who's with him has his hands off of him at some point. At some point, but immediately when he walks him out of the house, he walks him off the stoop, off the sidewalk, into the yard. He's facing away from the house. He's handcuffed. I know. I've watched the video, and I'm not sure that that's an accurate description of what the video shows. I mean, we can all watch it. Right. But he's in handcuffs, and he's being body searched. That's the first thing that happens when he comes out of the house. He's taken down off of the stoop, off of the sidewalk, and he's being body searched and patted down. You can see the officer pulling money out of his pocket. You know, all of this happens immediately when he takes him out of the house, and that's the time frame when the officer, the court, found that the search was taking place inside the house during that time. And, again, I think that the number of officers are critical. That's what made the difference between Gant and Belton, according to the Supreme Court. In Gant, that's one of the critical factors, because in Belton there was one officer and I think four people being arrested, while in Gant they had three people arrested, they had five officers there, and they had the people restrained in the car,  But the court does look at the number of officers and finds that significant. Under these circumstances, it would be unreasonable to believe there was any possibility that Ferebee could reach into his bag to obtain a gun or evidence. He had a reasonable expectation of privacy in his backpack, and the search was not a valid search incident to arrest. Thank you. Thank you. You have some rebuttal time. Okay. Mr. Enright. Thank you. Thank you, Your Honor. May it please the Court, Anthony Enright for the United States. This report properly denies Ferebee's motion to suppress evidence recovered from the bag that he told police wasn't his, because this Court has repeatedly held that evidence that had defended disclaimed ownership of a bag, even one that was in his possession, is sufficient to support a finding of abandonment, which permits police to search the bag. The Court held that disclaimer constitutes abandonment even of a bag that's in his possession in hot, which I think Judge Agee alluded to, is very much like this case. It answers most of the questions. Ms. Hester draws the distinction, which there is case law to support, that the searching officer has to know of the abandonment. I'm not aware of there being any evidence here that the searching officer knew of the defendant's abandonment of the bag. So the second part of what you mentioned is correct. Agent Gross did testify he didn't hear the disclaimer. But this Court held in Hahn that the intent of the searching officer is not relevant. And more to the point is Stevenson. Well, it wasn't so much his intent. I thought the searching officer in Hahn had heard everything that the defendant said. I think that's true, Your Honor. But I believe it makes the broader point that the question is, what is the intent of the person abandoning? And Stevenson is more specific to that point. The abandonment in Stevenson was based on a letter from the defendant that he wrote to his girlfriend saying, I'm giving up this house, I'm giving up all the property. The police didn't see that letter. There's nothing in that decision that suggests that. And Stevenson, again, reiterates the point. It's a right that's personal to the defendant. But intent is not the same thing as knowledge, is it? No, well, I think intent can mean purpose or knowledge. But in Stevenson, there was no knowledge. There was absolutely nothing indicating in Stevenson that the police knew of this letter that the defendant had written to his girlfriend. It was something that was presented in court to show that the abandonment occurred. And as, Judge Agee, I think you mentioned, that just makes sense. If I abandon something and I say I don't have a right of privacy in it anymore, then I don't have it. Now, there's a separate line of case... Unfortunately, just because I may think some proposition doesn't make sense, doesn't make it the law. You've got case law that supports Ms. Hester's position. There's some support for that. Well, there's some support for the idea that if the circumstances known to the police justify the police in relying on a reasonable understanding that there was an abandonment or something similar to it, that they may be able to conduct a search. United States v. Washington, I don't know if it was in our brief, either of our briefs, I do think it was cited in the papers to the district court. It's 677S2D394. That was a statement by somebody at an airport about saying, look, I don't know what's in this bag that she grabbed. The court said, this is not a case of abandonment, but under the circumstances, the police were justified in relying on what they saw under the circumstances to move forward. We are not invoking that doctrine. Let me ask you a question about the facts. Is there a factual basis for the district court making the finding that the defendant was extending the bag in the direction of officers? Sure, Your Honor. Can you tell me what page that's on? Well, the page is, I actually do have a page for Officer Ben Savage's report, which is Joint Appendix 17. The rest is in the video. Because what he said was, what the report says, and I think all the testimony he said was that he got up from the couch and he held it out in his left hand to his side. And if you look at the video, there are three officers standing to the left side of the couch. But the video doesn't show him extending the bag. No, that was immediately before. But a point that I think is correct, that the defense made below, is that that scene at the beginning fairly and accurately depicted what went before, which was a cramped space that had six officers. But I'm looking at page 17, and his report said he stood up and held it out to his side. Yes, Your Honor. I don't see the part that says toward the officers. No, Your Honor. I think the district court did that, coupling that with looking at the video. Because at the time there were officers, three of them. Was there more to the video that we didn't see? I'm confused as to how you can say that the video shows he extended it toward the officers if it's not in the video. Well, I think it's an inference. And it's an inference, by the way, it's based on an inference that the defendant asked the court to draw from the district court below, which was that the scene depicted at the start of that video was the scene at the time of the search. Because he was trying to make the point it's a very cramped space and there are officers all around. Well, that cuts both ways. The district court was free to draw the inference that seconds before what we saw in the video, that was pretty much the scene. And so if there were officers standing to the left of the couch in the video, there were officers standing at the left of the couch most likely, more likely than not, which is the standard, a few seconds earlier. But there's no specific testimony to that effect. It's an inference you draw from the video and the testimony and report of the officer. That's correct, Your Honor. Nobody testified to that effect at all. The report was admitted into evidence without objection, was testified to be accurate, and the court had the video. And I think that's where it got it from. I don't think it matters for two reasons. First, over and over again, this court, I think, in Hahn, this court in Leschuk, this court in Williams, has held a statement disclaiming ownership is sufficient to support an inference or to support a conclusion that the defendant abandoned his property. You don't need some corroborating physical conduct. Second, the court made that finding orally at the hearing before saying anything about this extending the bag toward the officers. I'm sorry, the court made which finding now before that? The court told the parties at the hearing orally, it said, I'm finding that there was an abandonment here. It didn't make any mention of holding the bag out toward the officers. And what the court said later was that, in its written order, was that holding it out toward the officers reinforces its conclusion informed largely by the statement, which was an unequivocal abandonment, which is consistent with this court's decision. This court's decision in Williams, there was a defendant that they asked him, was there anything in this room that you don't, anything else in this room you don't own? He said, that suitcase. And that was enough. This was something beyond that, by the way, Your Honor. He was asked, are there any weapons in that bag? And he said, actually, the bag's not mine. That wasn't a question, were you the person who bought the bag? That was a question, do you know if there are any weapons in the bag? And when he replied, well, actually, the bag's not mine, that's not just saying I don't have a property interest in the bag. It's saying, I don't know anything about this bag. I have no idea if there are weapons in it. You do your thing with it. That's a very reasonable inference for the court to draw, and that's exactly what it did. I do want to turn to the question about a search incident to arrest, starting with the fact that the defendant cannot bypass the district court by saying, I'm not making this argument. I'm not arguing that Gantt extends beyond vehicles, repeatedly and unequivocally. And then the court of appeals say for the first time, oh no, we win because Gantt extends beyond the vehicle context. That is a waiver in the most unequivocal form. The defense counsel specifically cited Gantt, acknowledged it as an issue, and when we said the defense is arguing that Gantt applies beyond the vehicle context, the defense counsel said, not once, but twice, the government's got that wrong. That's not what we're arguing. We're not arguing that Gantt extends beyond the vehicle context. Does that really make a difference? I mean, you know, under Schimel, I mean, you have the basic framework, so what difference does it make? Yes, Your Honor, because Schimel, as interpreted by this court in Hahn and in Lipman, is that so long as there was a danger at the time of the search, even if the danger is completely attenuated, even if they're able to separate someone from their bag to the point where the danger is completely eliminated, which was the testimony in Hahn, they can still search it. So pre-Gantt law, unless Gantt applies outside of the vehicle search context, pre-Gantt law justifies the court's decision unequivocally. Well, if we disagree with your reading of Schimel in later cases, what does that do to your case? Well, Your Honor, under Gantt, so what Gantt said was the rationale for the search incident to arrest exception to the warrant requirement disappears when there's no possibility that the defendant can access a weapon or destructible evidence. That's not what we have here. We're not even close. As you pointed out, Your Honor, the defendant was steps away from the bag at the time. All of the decisions that have applied to Gantt outside the context have applied it to far more difficult circumstances for the defendant, when he's on the floor with his hands cuffed behind his back, when he's got multiple armed people keeping him down. There's certainly a bunch of police officers there. They certainly are trained experts, and they certainly did what they could to make sure he's not going to get at that gun. But a possibility exists. What's your best post-Gantt case that supports you here? I think any of these. Shafir, he's handcuffed and guarded by two policemen, bags on the floor. Perdona or Cook, where the defendant's face down with his hands cuffed behind his back. Those are situations where it's really not likely that he's going to be able to get that bag. But the danger is enough. And the reason is a simple one that I think the defense has overlooked. It's a search incident to a lawful arrest. The police had every right to arrest him, and in this case, they had every right to be in that house, in that room where that bag was. They shouldn't have to undertake a substantial risk to their safety to execute their lawful duties. And that's explicit in the concept of it being reasonable. Reasonableness is all that the Fourth Amendment demands. And the Supreme Court made that explicit in Gantt. It says if there's a possibility, a real possibility, then the search incident to arrest exception does apply. Do you agree that the evaluation is the totality of the circumstances? Yes, Your Honor, and the court did that. So you wouldn't just stop with the statement. You've got to go further. No, that's correct, Your Honor. I think the court should consider all of the circumstances. Now, a statement when somebody asks you, is there a gun in that bag, you say, well, actually, it's not in my bag, that is a very, very strong circumstance. So it's not surprising that all, there's all kinds of decisions out there that hold unequivocally, look, if you have that kind of disclaimer, you can find an abandonment. But the court properly considered the totality of the circumstances. It said as much several times, four or five times in its order, and it set out all the circumstances, including why they were in the house, what they did know, how the defendant stood up. But that the defendant said, it's not my bag, in response to a question about what's in the bag, it found to be a very salient fact. And this court's precedents well established that sufficient to support a finding of abandonment. I assume you're, and the government's not making an inventory search argument. I'm not, Your Honor. We do have the burden to introduce some evidence that there would have been an inventory search or otherwise some reason for inevitable discovery. We did not introduce that evidence. We look for it, but I don't think we have the evidence to introduce. We've read your brief. Is there anything else you wanted to tell us this morning? If this court has no further questions, I will yield the balance of my time back to the court and ask that it confirm the decision of the district court. Okay. Thank you very much. Thank you, Your Honor. Ms. Hester, you've got some time. I'd like to talk for a minute about the district court's finding that Fairview held the bag out to officers in a gesture of surrendering it. There is nothing in the record to support that, and as the court has pointed out, the only reference to it is in the report of Officer Ben Savage in the record. I do think that the district court, two days after the hearing, issued the order, and I think that its finding actually came from the government's response to the defendant's motion to suppress, where the government made that assertion in its response, but it never backed that up with any evidence at the hearing. And that's on page, Joint Appendix, page 19. And if the only evidence is that he held the bag up when he was raising his arms to be searched, that wouldn't even be any kind of voluntary action. He was made to do that by the police, so that can't be any kind of indication of abandonment on his part. The government points to Hahn as inconsistent with the Seventh and Eighth Circuit cases, which say that the knowledge of this searching officer is where the court has to look at. The facts available to the searching officer are critical. But Hahn doesn't stand for... Hahn is not inconsistent with those statements. It merely stands for the proposition that an officer's subjective intent doesn't matter, not that the objective facts available to the searching officer are irrelevant. Hahn is just not on point with that. And also I'd like to go back to Judge Agee. You said that Hahn said the bag was not his. Actually, that's not correct. They asked him if they could move the bag, and he said, okay. And they may have said, can we move your bag? And he said, okay, but he never asserted that the bag was his before they moved it away from him, and he disclaimed ownership after it was out of his physical possession. And the government hasn't identified a single case in which a person was in physical possession of the bag, and the court found that a disclaimer of ownership was sufficient to show abandonment. However, as I said before, the closest case was that Torres case, and when the woman disclaimed ownership, she said additional things, that she didn't know what was in the bag, that she'd been asked to carry it, and also the police were welcome to look into it. With respect to the government's waiver argument on the Gantt issue, the government makes that argument by taking defense counsel's comments completely out of context. It was clear that he was asserting that he had a right to relief. Well, does it make any difference? No, it doesn't make any difference anyway, because under you, he made the claim that the search of the bag violated the Fourth Amendment, and we can raise any issue, any arguments that we like in support of that claim once that claim is preserved. So, it really doesn't make any difference. Well, for purposes of your argument, I mean, the basis in Shimmel would be sufficient for what you need to argue, wouldn't it? That's right, and that's what defense counsel was trying to say anyway, that basically, Gantt was a correction of Belton versus the interpretation that courts have been making of Belton versus New York. So, it was a course correction in which it said, this interpretation of Belton is inconsistent with Shimmel. It has to line up with Shimmel, and to line up with Shimmel, it has to be, you have to look at the facts at the time of the search, not at some later time. With respect to the government's argument that this case is like Cook, Perdomo, and Shakir, that's simply incorrect, because in those cases, the person was handcuffed, but also the person was right next to the bag. The bag was within arm's reach of the person. It wasn't a case like this, where in addition to the person being handcuffed, he was removed from the house.  at least six armed officers in the room where the bag was searched. I'm sorry, I shouldn't have said six armed officers. Six officers, at least two of them were armed in the room where the bag was searched, is also a distinguishing factor here, and a critical one. So, again, I'd ask the court to reverse the district court's ruling on shared responsibility. Let me ask you one question before we go. I've been trying to find this evidence. Can't put my finger on it right now. My recollection is that your client tossed the marijuana blunt after he was handcuffed. Is that correct? Is my reflection correct? That's not clear. There's no testimony about that. It's only the video that talks about it. I mean, they're obviously looking for the marijuana blunt. That's why I can't find it in the record. Right. So, the only indication that they were looking for it was in the video, and you can't tell when he tossed it. He might have flicked it out of his hand or something. Okay. But that's not clear. Thank you. Thank you. Thank you very much. We're going to come down and greet counsel and then take an extremely brief break. This honorable court will take a brief recess.
judges: G. Steven Agee, Henry F. Floyd, William B. Traxler Jr.